# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

| | |
|---|---|
| JERRY SMITH, | ) |
| Petitioner, | ) |
| vs. | ) No. 2:16-cv-00191-LJM-DKL |
| DICK BROWN Superintendent, | ) |
| Respondent. | ) |

**Entry Granting Petition for Writ of Habeas Corpus
and Directing Entry of Final Judgment**

The petition of Jerry Smith for a writ of habeas corpus challenges a prison disciplinary proceeding, WVE 15-12-0045, in which he was found guilty of being under the influence of intoxicants. For the reasons explained in this entry, Mr. Smith's habeas petition must be **GRANTED.**

## I. Overview

Prisoners in Indiana custody may not be deprived of credit time, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004), or of credit-earning class, *Montgomery v. Anderson*, 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Jones v. Cross,* 637 F.3d 841, 845 (7th Cir. 2011); *Piggie v. Cotton,* 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir. 2000).

## II. The Disciplinary Proceeding

On December 8, 2015, Correctional Officer Dugger issued a Report of Conduct charging Mr. Smith with "disorderly conduct" in violation of Code B-236. Dkt. 13-1. The Report of Conduct filed with the Respondent's return has that charge crossed out and a charge of "under the influence/intoxicants" written in. *Id.* The Code number was also crossed out and changed to B-231. *Id.* The Report of Conduct states:

> On 12-8-2015, at approximately 11:35 PM, I, Officer Dugger, witnessed Offender Smith, Jerry (#129911), behave in a disorderly fashion in FHU Left Wing Dayroom. Offender Smith was ordered to place his wrists into mechanical restraints but continued to wash, what appeared to be a redish-orange [sic] liquid that smelled of intoxicants, out of cups in his cell. Offender Smith was escorted to the showers in FHU while a search of his cell was conducted, Offender Smith proceeded to yell obscenities and other vulgar language as well as claiming this officer was "racist". Offender Smith appeared to be and acknowledged being intoxicated. Frank One was called to FHU Left Wing. Offender Smith resides in FHU cell 112.

Dkt. 13-1, p. 1.

Officer Tinkle and Officer Vanhorn submitted collaborative witness statements. Dkt. 13-1, pp. 2-3.

Mr. Smith was notified of the charge on December 10, 2015, when he was served with the Report of Conduct and the Notice of Disciplinary Hearing (Screening Report). The Screening Officer noted that Mr. Smith would obtain a statement from Offender Conteras and requested a statement from Sergeant Vrzina. Dkt. 13-2. Mr. Smith also requested video to "show I steped (sic) out and talked to Ofc. Tinkle why is he shutting my door. I have been set up before at Pendleton by staff. It will show I was talking with Ofc. Dugger 5 min. later Ofc. Dugger comes back to our cell and states then after what I heard I have to write you up." *Id.*

The Hearing Officer conducted a disciplinary hearing on December 28, 2015. Dkt. 13-9. The Hearing Officer noted Mr. Smith's statement that "I wasn't washing anything out of the cup

& I didn't acknowledge I was drinking. I didn't do this- my bunkie took it like a man." *Id.* Cellmate Keith Ellis provided a statement: "On 12-8-15 at 11:35 p.m. I had a grievance with C.O. Dugger. However I was intoxicated and beligerant (sic). This made the C.O. take his anger out on my cell (sic) instead of me. My bunkie wasn't drinking and does not drink. He even requested a breathalyzer. He was denied. The Sgt. then told C.O. Dugger to write us both up and we can sort it out at DHB." Dkt. 13-8.

Relying on the Report of Conduct, the statement of the offender, and witness statements, the Hearing Officer determined that Mr. Smith had violated Code B-231 (under the influence/intoxicants). The sanctions imposed included a written reprimand, a one month loss of commissary privileges, and the deprivation of 45 days of earned credit time. The Hearing Officer imposed the sanctions because of the seriousness of the offense and the likelihood of the sanction having a corrective effect on the offender's future behavior.

Mr. Smith's appeals were denied. This habeas action followed.

### III. Analysis

Mr. Smith argues that his due process rights were violated during the disciplinary proceeding. He combines a number of due process violations in each claim for relief, but the Court discerns his claims as follows: 1) he was found guilty of a charge different than what was on the Report of Conduct; 2) he was improperly denied evidence; and 3) the evidence was insufficient to support the charge.

The first claim considered is whether Mr. Smith was charged with "disorderly conduct," B-236, but was found guilty of being "under the influence of intoxicants." The Screening Report and Report of Disciplinary Hearing submitted with Mr. Smith's petition reflect only the charge of "disorderly conduct." Dkt. 2-1, pp. 4, 11. The Report of Conduct, Screening Report, and

Report of Hearing filed with the Respondent's return have that charge crossed out and a handwritten charge of "under the influence/intoxicants" written in. Dkt. Nos. 13-1, 13-2, 13-9. The B-236 Code number was also crossed out and changed to B-231. *Id.* The Respondent does not explain when or under what circumstances the charge was crossed out on those documents and changed to a different offense. *Compare* Ex. 2-1, pp. 4 and 11, *with* Ex. 13-1, p. 1; Ex. 13-2. The Respondent's only acknowledgement of the change in the charge is his argument that the evidence was "sufficient to satisfy the 'some evidence' standard that Smith was under the influence of intoxicants in violation of Code B-231 even if the Conduct Report was originally written for a disorderly conduct charge." Dkt. 13, p. 8. This sufficiency of the evidence argument fails to address the issue of notice.

"The notice should inform the inmate of the rule allegedly violated and summarize the facts underlying the charge." *Northern v. Hanks,* 326 F.3d 909, 910 (7th Cir. 2003). "The notice requirement permits the accused to gather the relevant facts and prepare a defense." *Id.* The record lacks any evidence from which the Court can conclude that Mr. Smith was given 24 hours' notice of the charge of which he was found guilty. The Respondent does not argue that the factual bases and defenses would apply equally to both charges, thus resulting in no due process violation. Different evidence would be relevant to defend the charges of "disorderly conduct" and being "under the influence." Mr. Smith's due process rights were violated in this regard.

Mr. Smith's next claim is that he was not given a reason why his request for video evidence was denied. Dkt. 2, p. 3. The Respondent argues that the record disputes this claim in that the Screening Officer noted the request was denied because the video did not include audio. Dkt. 13, p. 7, (citing dkt. 13-2). Mr. Smith points out in his reply that the Screening Report did *not* bear the handwritten note "no audio denied" when he was screened. Mr. Smith's copy of the

Screening Report is admittedly difficult to read, but it does appear to have a blank area where the handwritten note appears on the Respondent's copy. *Compare* dkt. 2-1, p. 11, *with* dkt. 13-2. Mr. Smith contends that through the entire process, including the appeals, the words "no audio denied" were not on the Screening Report or any other document. In other words, he was not given a reason why his request for video evidence was denied. In addition, he asserts that it is suspicious that the exhibits have been altered.

In an attempt to render an explanation for the denial of evidence unnecessary, the Respondent contends that Mr. Smith requested video evidence primarily to establish what officers had said to him, and that because there was no audio on the video, the video evidence would have been irrelevant. Mr. Smith's claim, however, is not that limited. His request for the video refers to the time line of events to show that Officer Dugger spoke to Mr. Smith and then later returned to the cell. Dkt. 13-2. Mr. Smith also responds that the video evidence would have refuted the charge of him being disorderly by showing his movement. The lack of clarity regarding whether the charge was "disorderly conduct" or "being under the influence" also comes into play with what the video might have shown.

Moreover, the Seventh Circuit has long held that "even when prison administrators have a valid justification for withholding video evidence, 'due process requires that the district court conduct an *in camera* review' to assess whether the undisclosed video is exculpatory." *Johnson v. Brown,* No. 16-3495, 2017 WL 1040773, *3 (7th Cir. March 17, 2017) (quoting *Piggie v. Cotton,* 344 F.3d 674, 679 (7th Cir. 2003)). The Respondent's rationale for finding no due process violation is not persuasive, but even if it were, the video has not been presented for *in camera* review to determine if, in fact, it would have been exculpatory. The denial of video evidence without explanation violated Mr. Smith's due process rights.

Having found two due process violations, the Court declines to discuss the remainder of Mr. Smith's claims.

## IV. Conclusion

Because Mr. Smith was not given adequate notice of the charge and was denied video evidence without explanation and without submitting the video evidence to the Court for *in camera* review, his due process rights were violated. Accordingly, his petition for writ of habeas corpus must be **granted.** The sanctions imposed in WVE 15-12-0045 must be **vacated and rescinded.** Mr. Smith's loss of earned credit time shall be **restored** as promptly as possible. The Indiana Department of Correction website reflects that Mr. Smith's earliest possible release date is currently June 1, 2018.

*Unless* the video evidence still exists, no rehearing shall be permitted under these circumstances. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 4/14/2017

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Electronically Registered Counsel

JERRY SMITH
129911
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only